UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13366-GAO

TRACEY LAZO, JAMEN HARPER, MUSTAPHA JARRAF, NY'COLE YOUNG THOMAS,
and all others similarly situated,
Plaintiffs,

v.

SODEXO, INC.,
Defendant.

OPINION AND ORDER
November 6, 2017

O'TOOLE, D.J.

Tracey Lazo, Jamen Harper, and Mustapha Jarraf have brought this putative class action

against Sodexo, Inc., a company that contracts with various educational, health care, and business

institutions to provide food related services and facilities management.[1] The plaintiffs allege that

the defendant violated the Massachusetts Tips Act, Mass. Gen. Laws ch. 149, § 152A, by retaining

money collected from patrons as service charges, rather than remitting the monies to wait staff and

service employees as the statute requires. After the parties conducted relevant discovery, the

plaintiffs moved to certify a class of "[a]t least 604 Sodexo food and beverage wait staff and service

employees working at thirty-five (35) Massachusetts Sodexo locations where [Sodexo] has

imposed, and improperly retained, a 'service charge,' on patron food and beverage purchases."

(Pls.' Am. Mot. for Class Certification 1 (dkt. no. 61).) For the reasons set forth below, the

plaintiffs' motion to certify a class is DENIED.

---

[1] A fourth plaintiff, Ny'Cole Young Thomas, has been dismissed from the case.

## I.      Massachusetts Tips Act

The Massachusetts Tips Act provides:

> [i]f an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.

Mass. Gen. Laws ch. 149, § 152A(d). The Act defines "service charge" as:

> a fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender, including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or in addition to, a tip.

Id. § 152A(a). The statute however permits an employer to impose on a patron

> any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders.

Id. § 152A(d).

The purpose of the statute is to protect the wages and tips of the employees who fall within the scope of its protection. DiFiore v. Am. Airlines, Inc., 910 N.E. 2d 889, 893 (Mass. 2009) ("The Legislature's intent in enacting the Act can be plainly discerned from its language and history— to ensure that service employees receive the tips, gratuities, and service charges that customers intend them to receive.")

## II.     Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following necessary criteria for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.[2]

Fed. R. Civ. P. 23(a). In addition to meeting these necessary prerequisites, a putative class action plaintiff must also satisfy at least one of the three requirements of Rule 23(b). In this case, the plaintiffs contend that their claims meet the conditions of subsection (3) of Rule 23(b), which is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). A proponent of class-based litigation "must affirmatively demonstrate his compliance" with Rule 23. Id. That is, a party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" and "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (emphasis in original) (quoting Wal-Mart Stores, 564 U.S. at 350). As the Supreme Court has emphasized, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" and "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Wal-Mart Stores, 564 U.S. at 350–51 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160–61 (1982)); see also In

---

[2] To the extent the plaintiffs press an argument that Rule 23 does not apply to question of class certification in this case, it is rejected. See, e.g., Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 282–83 (D. Mass. 2015).

re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 6 (1st Cir. 2005) (approving district court's consideration of materials beyond the pleadings to determine whether to certify class).

In this case, the second and third elements of Rule 23(a)—commonality and typicality— are dispositive. Rule 23(a)(2) requires the plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the class's claims "must depend upon a common contention . . . capable of classwide resolution," meaning "that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Id. (emphasis in original) (citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (citation omitted). "In other words, the commonality requirement is met where the 'questions that go to the heart of the elements of the cause of action' will 'each be answered either 'yes' or 'no' for the entire class' and 'the answers will not vary by individual class member.'" Garcia, 98 F. Supp. 3d 277, 285 (D. Mass. 2015) (quoting Donovan v. Philip Morris USA, Inc., No. 06–12234–DJC, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012)).

Similarly, Rule 23(a)(3) requires that the claims of the purported class representatives, the named plaintiffs, be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). As a general matter, a representative plaintiff's claim is sufficiently typical of the class members' claims if it arises from the same event, practice, or course of conduct, and is based on the same legal theory. See Garcia–Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (citations omitted). The commonality and typicality analyses "tend to merge," since "[b]oth serve as guideposts for

determining whether . . . the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co., 457 U.S. at 157 n.13.

To satisfy these critical criteria, the plaintiffs rely on their allegations regarding the defendant's practices and on their general claim that the defendant "admitted to retaining the service charges that it collects from patrons at multiple Massachusetts locations and not distributing these funds to the putative class members." (Pls.' Mem. of Law in Supp. of Their Am. Mot. for Class Certification 8 [hereinafter Pls.' Mem.] (dkt. no. 62).) They contend that there are common questions of law and fact "essentially based on one central issue—the legality of Defendant's practice and policy of collecting and retaining service charges from patrons." (Id.) They further argue that the plaintiffs' claims are therefore typical of the class because they were "aggrieved by the same practice and policy . . . as the putative class members." (Id. 9–10.)

In the first place, the defendant's interrogatory response on which the plaintiffs rely does not in fact contain an "admission" that the defendant collected and retained "service charges" as that term is specifically defined in the Tips Act. Beyond that, the plaintiffs' contention suffers from a more serious flaw: on the record before the Court, developed after discovery on the issue of certification, the plaintiffs have not established that the defendant has any single "practice or policy" regarding fees, called by various names, collected at the thirty-five business locations proposed to be included in the scope of the class. Even though the burden to establish commonality is relatively light, see In re New Motor Vehicles Canadian Export Antitrust Litig., 552 F.3d 6, 19 (1st Cir 2008), it is still the plaintiffs' burden to do so, see Wal-Mart Stores, 564 U.S. at 350 (describing proponent's burden to "affirmatively demonstrate his compliance with the Rule").

The plaintiffs claim that they have "identified at least thirty-five (35) locations where Defendant imposes a 'service charge,'—as that term is defined in the Massachusetts Tips Law." (Pls.' Mem. 3–4.) However, they only identify fifteen such locations in their brief, and they describe the defendant's purported practices at only seven of those. (Id. 3, 4 n.4.) The seven locations that they describe include a variety of companies and educational institutions that supposedly imposed a service charge falling within the scope of the Tips Act. There are variations in the assessment or calculation of the various charges that are not insignificant, as there also are in the ways in which the charges are labeled or described. (See id.) These differences alone might not necessarily impede class certification.

However, the defendant's interrogatory responses[3] and the declarations submitted by the defendant offer richer detail as to the purported "practices" across the thirty-five locations the plaintiffs seek to have included in the class. For example, at the location identified as One Lincoln Street, the defendant provides services to two customers, a bank and a law firm. It operates a cafeteria with traditional cafeteria-style food service, food delivery to meetings throughout the building, and an executive dining room for companies located within the building. The executive dining room offers restaurant-style direct food service, banquet service, drop-off catering, unmanned buffets, service ware, linen rental, stationary displays, balloons, and flowers. Additionally, the facility at One Lincoln Street makes offsite deliveries to satellite locations. Orders made through the executive dining room are subject to an 18% "administrative charge," regardless of whether any wait staff are involved in the transaction (as they sometimes are). (Pls.' Mem., Ex. A at 5–6 (dkt. no. 62-1); Decl. of Douglas J. Hoffman, Esq. in Supp. of Def.'s Opp'n

---

[3] The interrogatory responses were first submitted by the plaintiffs in support of their motion to certify.

to the Am. Mot. for Class Certification, Ex. A ¶¶ 3–6, 13–14, 16 [hereinafter Hoffman Decl.] (dkt. no. 81-1).)

At Plimoth Plantation, the defendant provides different services. An onsite cafe offers quick service food items. There are two different Thanksgiving dining programs and other themed dining events for which individual tickets are sold and no separate fees are applied. The defendant also provides catering at Plimoth Plantation for private events such as weddings for which a 20% fee was imposed. (Pls.' Mem., Ex. A at 6; Hoffman Decl., Ex. F ¶¶ 3–6, 10 (dkt. no. 81-6).)

At various educational institutions, including Curry College, Dean College, Brandeis University, Merrimack College, and the University of Massachusetts, a fee was not typically charged, although there have been what appears to be isolated—perhaps even random—instances where one was applied, including occurrences where a fee may have been mislabeled, applied but refunded, applied to bring a customer to the food/drink minimum for the event, or (in at least one instance) actually distributed to the wait staff and bartenders. (Pls.' Mem., Ex. A at 6–7.) For example, at Merrimack, where the defendant provides a cafeteria, a lounge, take-out service, a pub, a bakery cafe, a private dining room, and various catering options, a "service fee" appeared on some order sheets for catering, but the fee was for china service and was refunded. (Id. at 7; Hoffman Decl., Ex. G ¶¶ 3–4, 9–10 (dkt. no. 81-7).) At another educational institution, Bridgewater State, the defendant runs dining halls, food courts, coffee locations, and on-campus catering, and various fees have been imposed at different times during the proposed class period, such as a $7.95 delivery charge for food deliveries to some buildings and an 18% fee for events that were served on china or that required wait staff. (Pls.' Mem., Ex. A at 6; Hoffman Decl., Ex. I ¶¶ 3–4, 7–10, 12 (dkt. no. 81-9).)

At MassMutual-Chicopee Conference Center, the defendant provides various services, including a cafe and catering with wait staff, drop-off catering, self-service lunch and dinner buffets, and room service for overnight guests. The defendant applied an 18% "service fee" for daytime catering orders that required an employee to remain present through an entire event as a client liaison or for any evening catering orders, regardless of whether direct food service was involved. The defendant applied a 20% fee for third-party events and weekend events, regardless of whether the event required wait staff. (Pls.' Mem., Ex. A at 7; Hoffman Decl., Ex. K ¶¶ 3–5, 10–12 (dkt. no. 81-11).)

At Reebok Call Center, a fee was not typically charged, except for a small number of "administrative charges," each in the amount of $0.01. (Pls.' Mem., Ex. A at 7.)

At various other locations apparently included in the plaintiffs' thirty-five selected locations, no evidence is offered that the defendant applied any kind of charges or fees.

In sum, the record evidence shows that Sodexo provides a variety of different services to a variety of different clients at a variety of different locations employing a variety of different practices regarding fees. The plaintiffs broadly assert that class certification is appropriate because the ultimate resolution is based on "one central issue—the legality of Defendant's practice and policy of collecting and retaining service charges from patrons." That claim is refuted by the factual record. Even if it were assumed that every member of the putative class had some version of a claim for relief under the Tips Act, the dissimilarities in billing practices and work procedures across the proposed locations, and therefore across class members, reflect an utter lack of a "practice and policy" of charging fees that was common to all service venues. See Wal-Mart Stores, 564 U.S. at 349–50; compare Mooney v. Domino's Pizza, Civil Action No. 1:14-cv-13723-IT, 2016 WL 4576996, at *2 (D. Mass. Sept. 1, 2016) (finding that commonality was established

where defendant had a "polic[y] and practice[]" of always imposing and retaining a delivery charge for pizza delivery, although there were differences in the ways fees were designated and notice was provided); George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 175–76 (D. Mass. 2012) (finding that commonality was established where plaintiffs asserted illegal prevailing wages due to a "single wage policy"—a "common mode of [paying workers] that pervades the entire company"—although specific contracts and pay rates varied (citation omitted)). A determination, for instance, that the defendant violated the Tips Act based upon the "service fee" imposed on evening catering orders at MassMutual would not resolve whether the defendant violated the Act based upon an "administrative charge" imposed on linen rental and balloons at One Lincoln Street, or upon the one-cent "administrative charge" imposed a few times at Reebok, or upon a charge at Merrimack that was applied but then refunded, or upon the absence of a fee for themed dining events at Plimoth Plantation. The plaintiffs' proposed class is so broad that it includes class members who worked at locations for which there is no evidence offered that fees were even imposed.[4]

The three named plaintiffs worked together at One Lincoln Street, so they have at least some things in common with each other. What they have not shown is that there are questions of fact or law that can be given a common answer across the various services provided by Sodexo over the range of various locations, governed by differing contractual terms and fees between Sodexo and the client. Contrary to the plaintiffs' contention, the named plaintiffs were not "aggrieved by the same practice or policy . . . as the putative class members" because there appears to be no "practice or policy" common to the multiple locations where the putative class members

---

[4] The Court expresses no opinion as to whether fees that the defendant charged for some services at some locations were "service charges" under the Tips Act or whether there are other classes of Sodexo workers who may have been appropriately grouped together in a class action.

worked. For example, a determination that Sodexo violated the Tips Act with respect to the three named plaintiffs working at One Lincoln Street would do nothing to determine whether the statute had been violated at other locations where other services were rendered on varying terms. It follows, of course, that the plaintiffs' individual claims are therefore not typical of the variety of different claims that would have to be asserted by workers at other locations.

In sum, the plaintiffs have failed to show a consistent practice or policy regarding the imposition of fees across their proposed class locations that would permit classwide resolution of their claim, by permitting the determination of a "common answer" to a classwide issue. See Wal-Mart Stores, 564 U.S. at 350. Accordingly, they have not established either commonality or typicality as required by Rule 23(a)(2)–(3).

### III.   Conclusion

For the foregoing reasons, the plaintiffs' Amended Motion for Class Certification (dkt. no. 61) is DENIED.

It is SO ORDERED.


/s/ George A. O'Toole, Jr.
United States District Judge